Billy Joe SANDERS, Individually, and In his capacity as Trustee for Keystone Trust, and Keystone Trust, Appellants

v.

WESTMORELAND COUNTY TAX CLAIM BUREAU and Kelly A. Rowe.

Commonwealth Court of Pennsylvania.

Argued April 22, 2014.

Decided May 14, 2014.

Reargument Denied June 26, 2014.

Herbert A. Terrell, McDonald, for appellants.

Timothy C. Andrews, Greensburg, for appellee Westmoreland County Tax Claim Bureau.

BEFORE: SIMPSON, Judge, COVEY, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge COVEY.

Billy Joe Sanders, Individually, and In his capacity as Trustee for Keystone Trust, and Keystone Trust (collectively Sanders) appeal from the Westmoreland County Common Pleas Court's (trial court) September 24, 2013 order denying Sanders' summary judgment motion, granting Kelly A. Rowe's (Rowe) summary judgment motion, and dismissing with prejudice Sanders' complaint against Rowe and the Westmoreland County Tax Claim Bureau (Bureau) seeking mandamus and declaratory judgment. The issue before this Court is whether the trial court erred when it granted Rowe's summary judgment motion, and concluded that Sanders did not have a binding purchase agreement for the property at 540 Keystone Street in

the City of Greensburg, Westmoreland County (Property). We affirm.

Rowe is the record owner of the Property. Rowe failed to pay real estate taxes on the Property, and as a result the Property was subjected to an upset sale pursuant to the Real Estate Tax Sale Law (RETSL),[1] at which no bids were received and the Property was not sold. The Property was then subjected to a judicial sale, at which no bids were received and the Property was not sold. Consequently, the Property was placed in the Westmoreland County repository.

In December 2011, Sanders submitted a $7,225.00 bid for the Property. Sanders paid the purchase price and a recording fee. However, before receiving written consent of the relevant taxing bodies to sell the Property to Sanders, the Bureau advised Sanders by December 13, 2011 letter that the sale had been denied because Rowe had paid all taxes and costs in full. The total amount paid by Rowe exceeded $21,000.00. The Bureau returned the check for the recording fee and informed Sanders that the purchase price would be refunded.

On February 1, 2013, Sanders filed a Complaint against the Bureau and Rowe seeking mandamus and declaratory relief. On July 15, 2013, Sanders filed a motion for summary judgment. On August 20, 2013, Rowe filed a counter-motion for summary judgment. On September 24, 2013, the trial court denied Sanders' motion for

summary judgment, granted Rowe's counter-motion for summary judgment, and dismissed Sanders' complaint with prejudice. Sanders appealed to this Court.[2]

Sanders argues that the trial court erred when it granted summary judgment in Rowe's favor, permitted Rowe to redeem her property, and concluded that Sanders did not have a binding purchase agreement for the Property. Specifically, Sanders contends that after the upset sale, Rowe lost her ability to redeem the subject property by satisfying the outstanding taxes. Sanders further asserts that the Bureau had already accepted his bid at the time of the redemption and thus, he had a valid, enforceable contract. We disagree.

In *Commonwealth v. Sprock*, 795 A.2d 1100 (Pa.Cmwlth.2002), this Court provided an overview of the tax sale process. The Court explained:

When the owner of a property fails to pay real estate taxes on that property, the amount of those taxes becomes a first lien against the property and is filed with the tax claim bureau of the county in which the property is located. If the lien is not satisfied, the tax claim bureau will, after notice and opportunity to cure, offer the property for sale at an upset tax sale. A property owner may satisfy the lien(s) against his property by paying the amount of the lien(s) to the tax claim bureau prior to an upset sale or he may bid on the property at the upset sale. **After the upset sale,**

1. Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101–5860.803.

2. It is well established that:

A grant of summary judgment will be reversed only where there has been an error of law or a manifest abuse of discretion. When reviewing an order granting summary judgment, we are obliged to read the record in the light most favorable to the

non-moving party and resolve all doubt against the movant.

*Moscatiello Constr. Co. v. Pittsburgh Water & Sewer Auth.*, 167 Pa.Cmwlth. 508, 648 A.2d 1249, 1251 n. 3 (1994). "Our scope of review in tax sale cases is limited to determining whether the trial court abused its discretion, clearly erred as a matter of law or rendered a decision unsupported by the evidence." *Piper v. Tax Claim Bureau of Westmoreland Cnty.*, 910 A.2d 162, 164 n. 2 (Pa.Cmwlth.2006).

the owner of the property is prohibited from redeeming it. If no bids are received that equal or exceed the upset price, the Bureau is required, within the following twelve months, to petition the court for permission to conduct a judicial sale. If insufficient bids are received at a judicial sale, the Bureau must continue to hold the property in its repository of unsold property and may advertise it periodically and accept an offer of any price for the property. The owner of a property may not, however, repurchase his property at either a judicial sale, a private sale, or from the Bureau's repository of unsold property....

... A tax claim bureau is empowered to dispose of a tax delinquent property **the moment it concludes an upset sale**; it may either convey title to the successful bidder at the upset sale if the price is met, or **it may,** alternatively, **convey title at a later judicial sale or, failing that, it may, with the written consent of the taxing district involved, 'accept an offer of any price ... without court approval and published notice of sale.'** Section 627(a) of the [RETSL], 72 P.S. § 5860.627(a).[3] To exercise such control, however, the tax claim bureau must have the statutory authority to convey good title to the property in some manner.

Sections 608 and 615 of the [RETSL, 72 P.S. §§ 5860.608, 5860.615,] instruct that the deed to a tax delinquent property sold at an upset sale shall be conveyed by the bureau as trustee, which is a person or entity holding legal title to property for the benefit of another. Thus, it is clear that **a tax claim bureau must become trustee of a property at the moment it concludes the upset sale, that is, when the property is struck down, and legal title to the tax delinquent property passes to the tax claim bureau, as trustee, at that time, which is the most appropriate time for that to happen because the owner's right of redemption at that time is extinguished.**

*Id.* at 1102–03 (citations, footnote and original emphasis omitted; emphasis added). The *Sprock* Court further noted, "at an upset sale, where there are no bids of the upset sale price, all rights in the property, *i.e.,* legal title, are transferred from the owners of the property to the tax claim bureau, as trustee, by operation of law." *Id.* at 1103 n. 9. In the instant action, no bid was made for the .Property at the upset sale or the judicial sale, thus the Property was placed in the county repository.[4] In accordance with *Sprock,* at the

3. Added by the Act of July 3, 1986, P.L. 351.

4. Notably, Section 501(c) of the RETSL, provides, "[t]here shall be no redemption of any property after the actual sale thereof." 72 P.S. § 5860.501(c). Sanders argues that the Bureau did not have the right to permit Rowe to redeem her property because, "[t]he property owner's right to redeem the property is extinguished at the conclusion of the **actual sale** even if no bid is made for the upset sale price, unless the trial court sustains objections or exceptions to the sale and sets aside the sale." *Pacella v. Washington Cnty. Tax Claim Bureau,* 10 A.3d 422, 428–29 (Pa. Cmwlth.2010) (emphasis added). Section

102 of the RETSL defines the term "[a]ctual sale" as "payment of the full amount of money agreed to be paid as the sale price by the successful bidder or purchaser at upset sale under [S]ections 605 through 609 [of the RETSL]." 72 P.S. § 5860.102 (emphasis omitted). However, Section 605 of the RETSL provides that the property may not be sold "unless a bid equal to the upset price is made." 72 P.S. § 5860.605. Further, this Court has stated:

Section 607(g) of the [RETSL], 72 P.S. § 5860.607(g), provides that, after an upset. sale, the owner is precluded from redeeming the property. Specifically, the statute

conclusion of the upset sale, all rights in the Property were transferred to the Bureau as trustee.

Our Supreme Court recognized in *Tracy v. County of Chester,* 507 Pa. 288, 489 A.2d 1334, 1339 (1985):

[I]t is a momentous event under the United States and the Pennsylvania Constitutions when a government subjects a citizen's property to forfeiture for the non-payment of taxes. We have had occasion before to note that we hold no brief with wilful, persistent and long[-]standing tax delinquents, but at the same time, we have also observed that the 'strict provisions of the [RETSL] were never meant to punish taxpayers who omitted through oversight or error ... to pay their taxes.'

provides, there shall be no period of redemption after such sale. Redemption is only precluded when the sale is confirmed absolutely. This occurs if no objections or exceptions are filed, or where objections or exceptions are finally overruled. Once the sale is confirmed absolutely, no right of redemption can exist in a former owner and the proceedings of the Bureau with respect to the sale shall not be inquired into judicially *except* with respect to the giving of notice under the act....

*Rivera v. Carbon Cnty. Tax Claim Bureau,* 857 A.2d 208, 216 (Pa.Cmwlth.2004) (citations and quotation marks omitted). Notably, in *Pacella,* unlike in the instant matter, the subject property was sold at an upset sale. Thus, the *Pacella* Court's statement that redemption rights are terminated at "the conclusion of the **actual sale even if no bid is made for the upset sale price**" is dicta and is not dispositive here because **there was no actual sale** in the instant matter. *Pacella,* 10 A.3d at 429 (emphasis added).

5. Black's Law Dictionary defines "tax redemption" as "[a] taxpayer's recovery of property taken for nonpayment of taxes, accomplished by paying the delinquent taxes and any interest, costs, and penalties." *Black's Law Dictionary* 1391 (9th ed. 2009).

6. Sanders argues that by permitting Rowe to redeem her property, the Bureau authorized

*Ross Appeal,* [366 Pa. 100, 76 A.2d 749, 753 (1950) ]. As this Court stated in *Hess v. Westerwick,* [366 Pa. 90, 76 A.2d 745, 748 (1950),] 'the purpose of tax sales is not to strip the taxpayer of his property but to insure the collection of taxes.'

■ Here, the trial court made clear that the Bureau permitted Rowe to "simply pa[y] the taxes and costs she owed prior to the sale being approved by the taxing districts." Trial Ct. Op. at 4. Thus, the Bureau's acceptance of Rowe's unpaid taxes and fees constituted a redemption.[5] Even if, as Sanders argues, Rowe did not have the **right** to redeem her Property, the Bureau, could, in its discretion, still permit her to do so.[6] It is well-established

Rowe to "assume a *de facto* purchaser status" in contravention of the Law. Sanders' Br. at 8. Relying on Section 618(a) of the RETSL, he contends that Rowe was prohibited from repurchasing her property. Section 618(a) of the RETSL, entitled "[r]epurchase by owner" prohibits an owner from repurchasing the property after an upset sale. That section reads, "[t]he **owner shall have no right to purchase his own property** at a judicial sale, a private sale or **from the bureau's repository for unsold property** under the provisions of this act." 72 P.S. § 5860.618(a), added by the Act of July 3, 1986, P.L. 351 (emphasis added). In recognition of the restriction in Section 618(a) of the RETSL, the trial court concluded that Rowe did **not** purchase the Property from the repository, but instead "paid the taxes and costs she owed prior to the sale being approved by the taxing districts." Trial Ct. Op. at 4.

The instant action is not one involving a record owner seeking to force the Bureau to recognize a right to redeem or purchase her property. Here, the Bureau **willingly** accepted the record owner's payment of outstanding taxes and fees in exchange for the return of the Property and opposes Sanders' attempt to invalidate the Bureau's actions. Sanders, a third-party, asserts that the Bureau was **prohibited** from permitting Rowe to redeem her Property. While the statutory language is clear that Rowe was precluded from purchas-

that "[t]he decision to accept any compromise of delinquent taxes ... is wholly within the discretion of the taxing authorities." *Mehalic v. Westmoreland Cnty. Tax Claim Bureau,* 111 Pa.Cmwlth. 398, 534 A.2d 157, 159 (1987) (emphasis added); *see also In re Public Sale of Props.,* 841 A.2d 619 (Pa.Cmwlth.2004).[7] In this case, it was in the interest of the Bureau, the taxing authorities and the taxpayers for the Bureau to accept Rowe's full payment of taxes and costs because Rowe's payment far exceeded the amount of Sanders' bid.

■ Further, the Bureau was not required to sell Sanders the Property. Section 627(a) of the RETSL states:

> The bureau **may,** with the written consent of all the taxing districts where the property is located, accept an offer of any price for property placed in the 'repository for unsold properties' without court approval and published notice of sale. Any taxing district may not unreasonably withhold its consent to the sale of the property.

72 P.S. § 5860.627(a) (emphasis added). The Bureau had discretion, with the ultimate approval of the taxing authorities, to decide whether or not to sell the Property to Sanders. Because the Bureau had not received the required taxing authority ap-

provals, it did not have authority to enter into a binding contract to sell the Property.[8] Absent a binding contract, Sanders had no right to **require** the Bureau to transfer the Property to him. Accordingly, the Bureau was under no obligation to transfer the Property to Sanders, and, in fact, was prohibited by statute from doing so. *See McGaffic v. City of New Castle,* 973 A.2d 1047, 1057 (Pa.Cmwlth.2009) (" 'where a statute provides a method or formal mode of making municipal contracts, such provision is mandatory and must be observed, otherwise the contract is not enforceable against the municipality....' ") (quoting *Harris v. City of Philadelphia,* 283 Pa. 496, 129 A. 460, 462 (1925)); *see also Cent. Storage & Transfer v. Kaplan,* 487 Pa. 485, 410 A.2d 292, 294 (1979) (Individuals " 'contracting with a governmental agency must, at their peril, know the extent of the power of its officers making the contract.' ") (quoting *Commonwealth v. Seagram Distillers Corp.,* 379 Pa. 411, 109 A.2d 184, 188 (1954)). Given that the Bureau had the discretion to permit Rowe to redeem her property, and Sanders did not have a binding contract to purchase the Property, the trial court properly granted Rowe's summary judgment motion.

For all of the above reasons, the trial court's order is affirmed.

ing the Property from the repository, the Bureau was not **prohibited** from voluntarily permitting a redemption.

7. In *In re Public Sale,* **after an upset sale was held** and no bids received, the subject property was ordered to be exposed to a judicial sale. Upon receipt of the notice of the pending judicial sale, the record owner negotiated an agreement with the taxing districts to pay the outstanding taxes and fees. However, the tax bureau neglected to remove the property from the judicial sale list. The property was sold at judicial sale. Thereafter, the taxing districts and the record owner jointly petitioned to set aside the judicial sale. This

Court affirmed the trial court's order granting the petition to set aside the sale. Thus, in that matter, redemption was not **prohibited** after the upset sale.

8. Sanders contends that the Bureau never offered evidence of the taxing districts' objections to his bid. However, **in order for a tax bureau to accept an offer** for a property in a repository, Section 627(a) of the RETSL requires that the tax bureau **must receive** "**written consent** of all the taxing districts...." 72 P.S. § 5860.627(a) (emphasis added). Thus, the Bureau was not required to establish evidence of the taxing districts' **objections.**

## ORDER

AND NOW, this 14th day of May, 2014, the Westmoreland County Common Pleas Court's September 24, 2013 order is affirmed.

