IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nancy G. Jenkins

        v.

Fayette County Tax
Claim Bureau

        v.

Scott D. Bush,
            Appellant

:
:
:  No. 71 C.D. 2017
:  Submitted: November 13, 2017
:
:
:
:
:
:
:
:
:
:

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT              FILED: January 3, 2018

          Scott D. Bush (Purchaser) appeals an order of the Court of Common Pleas of Fayette County (trial court) setting aside the September 19, 2016, upset tax sale of property owned by Nancy Jenkins (Taxpayer). Purchaser asserts that the trial court erred because the Fayette County Tax Claim Bureau followed the tax sale procedures mandated by the Real Estate Tax Sale Law (Tax Sale Law).[1] Discerning no merit to this contention, we affirm the trial court.

          Taxpayer owns a residential property located at 64 Vances Mill Road in Uniontown, Pennsylvania (Property). When the 2014 real estate taxes on the Property were not paid, the Tax Claim Bureau listed the property for upset sale. At the tax sale on September 19, 2016, Purchaser bought the Property.

          On November 17, 2016, Taxpayer filed a petition to set aside the upset tax sale. Taxpayer contended that the Tax Claim Bureau did not comply with the

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§5860.101 - 5860.803.

tax sale notice provisions required by the Tax Sale Law. Purchaser petitioned to intervene, and it was granted. At the hearing on December 20, 2016, both the Tax Claim Bureau and Taxpayer presented evidence.

Marjory Stefanini, First Assistant of the Tax Claim Bureau, testified. She explained that the Property was listed for a tax sale because the 2014 real estate taxes were two years in arrears. The Tax Claim Bureau's records showed that the Property's tax delinquency totalled $1,446.32. Reproduced Record at 73a (R.R. __). The Tax Claim Bureau notified Taxpayer of the tax sale by the following means: (1) a published notice in the newspaper; (2) a certified mailed notice sent on April 22, 2016, and on April 29, 2016, both of which were returned as unclaimed; and (3) a notice posted on the Property on July 5, 2016. Then, ten days before the sale, the Tax Claim Bureau sent a notice to Taxpayer by first-class mail to the Property's address stating that if the "taxes weren't paid on or in full on the 16th, or made in a legal agreement, then [the Property] would go into tax sale on the 19th." Notes of Testimony (N.T.), 8/11/2016, at 10; R.R. 28a. Finally, Stefanini testified that nothing in the file suggested that Taxpayer had an agreement with the Tax Claim Bureau to make installment payments on the delinquent taxes. On cross-examination, Stefanini acknowledged that had Taxpayer brought sufficient cash to the office, she would have been eligible for an installment agreement.

Taxpayer is a 79-year-old widow. She testified that she purchased the property in 2014 for $115,000. She does not live at the Property; rather, she rents it. Taxpayer testified that in 2015 she made a payment of $17,000 to the Tax Claim Bureau for taxes owed on the Property and on three other properties she owns. This did not discharge her outstanding tax obligation, so Taxpayer agreed to make monthly payments of $400, to be applied to the taxes owed on the Property as well

2

as on the other three properties. Taxpayer conceded that this installment agreement had not been reduced to writing. When Taxpayer saw the notice posted on the Property, she did not construe it to mean that the installment agreement was no longer in effect; rather, she believed she could continue making payments on the taxes for the Property.

On September 16, 2016, Taxpayer went to the Tax Claim Bureau to make payment on the taxes owed on the Property and on another property. Her proffered cash payment for taxes owed on the Property was refused. She was informed that she could not proffer payment because the Property was "already in the tax sale." N.T. 26; R.R. 44a. Further, although Taxpayer did not have enough money to pay off the balance of the past due taxes, she did have enough to enter into a written installment agreement to remove the Property from tax sale.

On December 21, 2016, the trial court set aside the tax sale of the Property. Purchaser requested reconsideration, but it was denied. Purchaser then appealed to this Court.

On appeal,[2] Purchaser raises one issue. He contends that the trial court erred because the Tax Claim Bureau fully complied with the requirements of the Tax Sale Law. Taxpayer responds that Purchaser has waived all issues on appeal because he did not comply with Pennsylvania Rule of Appellate Procedure 1925(b) by filing a timely concise statement of errors complained of on appeal. The trial court's Rule 1925(a) opinion concluded that Purchaser's late filing of the Rule 1925(b) statement caused all his issues to be waived. Even so, the trial court explained that its decision to vacate the tax sale fully complied with the Tax Sale Law. In the alternative,

---

[2] Our review determines whether the trial court committed an error of law, abused its discretion, or rendered a decision without supporting evidence. *Darden v. Montgomery County Tax Claim Bureau*, 629 A.2d 321, 323 (Pa. Cmwlth. 1993).

Taxpayer argues that the Tax Claim Bureau did not comply with the Tax Sale Law because it refused to accept her payments proffered before the day of the scheduled upset tax sale.

We begin with Taxpayer's issue of waiver. In its Rule 1925(a)[3] opinion, the trial court found that Purchaser waived all issues because Purchaser did not file a timely Rule 1925(b) statement of errors complained of on appeal. Pennsylvania Rule of Appellate Procedure 1925(b)(2) states, in pertinent part, as follows:

> (b) Direction to file statement of errors complained of on appeal; instructions to the appellant and the trial court.--If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").
>
> ***
>
> (2) *Time for filing and service.*--The judge shall allow the appellant at least 21 days from the date of

---

[3] PA. R.A.P. 1925(a). This rule states, in pertinent part:

> (1) *General rule.*--Except as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.
>
> If the case appealed involves a ruling issued by a judge who was not the judge entering the order giving rise to the notice of appeal, the judge entering the order giving rise to the notice of appeal may request that the judge who made the earlier ruling provide an opinion to be filed in accordance with the standards above to explain the reasons for that ruling.

PA. R.A.P. 1925(a)(1).

the order's entry on the docket for the filing and service of the Statement. *Upon application of the appellant and for good cause shown, the judge may enlarge the time period initially specified or permit an amended or supplemental Statement to be filed.* Good cause includes, but is not limited to, delay in the production of a transcript necessary to develop the Statement so long as the delay is not attributable to a lack of diligence in ordering or paying for such transcript by the party or counsel on appeal. In extraordinary circumstances, the judge may allow for the filing of a Statement or amended or supplemental Statement *nunc pro tunc*.

PA. R.A.P. 1925(b)(2) (emphasis added). We have held that when a trial court orders the appellant to file a Rule 1925(b) statement, "the appellant *must* comply in a timely manner." *In re Clinton County Tax Claims Bureau Consolidated Return for Sale of September 24, 2012*, 109 A.3d 331, 334 (Pa. Cmwlth. 2015). Failure to comply with the trial court's order will result in waiver of all issues raised on appeal. *Id.*

In our early jurisprudence, this Court held that an untimely Rule 1925(b) statement did not waive all issues where the trial court issued an opinion addressing the merits of the appellant's issues. *See In re Corignani*, 873 A.2d 790 (Pa. Cmwlth. 2005). Here, as Purchaser observes, in spite of his untimely filing of a Rule 1925(b) statement, the trial court issued a Rule 1925(a) opinion. This is true but of no moment because *In re Corignani* has been overruled. In *Commonwealth v. Castillo*, 888 A.2d 775, 780 (Pa. 2005), our Supreme Court held that if an appellant fails to timely comply with a trial court's order to file a Rule 1925(b) statement, all issues raised on appeal are automatically waived. This was reaffirmed in *Commonwealth v. Schofield,* 888 A.2d 771, 774 (Pa. 2005). The Supreme Court specifically disapproved "prior decisions of the intermediate courts to the extent that

5

they have created exceptions to [PA. R.A.P. 1925] and have addressed issues that should have been deemed waived." *Castillo*, 888 A.2d at 780.

Since *Castillo*, this Court has repeatedly held that an appellant waives all issues for appeal where the Rule 1925(b) statement is not filed on time. *See*, *e.g.*, *In re Clinton County Tax Claims Bureau*, 109 A.3d at 335; *Commonwealth v. Holtzapfel*, 895 A.2d 1284, 1289 (Pa. Cmwlth. 2006). Waiver is not cured by the trial court's filing of a Rule 1925(a) opinion addressing the merits of the issues on appeal.

Nevertheless, Purchaser directs our attention to several decisions where the Superior Court addressed the merits of the issues raised on appeal, despite the untimely filing of a Rule 1925(b) statement, because the trial court had issued a Rule 1925(a) opinion on those issues. Purchaser cites *Commonwealth v. Rodriguez*, 81 A.3d 103 (Pa. Super. 2013) (Rule 1925(b) statement filed 4 days late); *Commonwealth v. Priest*, 18 A.3d 1235, 1238 n.5 (Pa. Super. 2011) (where defendant filed Rule 1925(b) statement late, Superior Court noted that "we shall overlook this fact and not find waiver as a result thereof."); *Commonwealth v. Burton*, 973 A.2d 428 (Pa. Super. 2009) (Rule 1925(b) statement filed one day late); and *Commonwealth v. Sohnleitner*, 884 A.2d 307, 311 (Pa. Super. 2005) (Rule 1925(b) statement filed "nearly one month late."). We are not persuaded. These holdings are contrary to the Supreme Court's decision in *Castillo* and to this Court's precedent in *In re Clinton County Tax Claims Bureau*, which is binding here.

In the alternative, Purchaser contends that he had good cause for the untimely filing of his Rule 1925(b) statement. In support, he directs the Court to Rule 1925(b)(2), which states:

> (2) *Time for filing and service.*--The judge shall allow the appellant at least 21 days from the date of the order's entry on

6

the docket for the filing and service of the Statement. *Upon application of the appellant and for good cause shown, the judge may enlarge the time period initially specified or permit an amended or supplemental Statement to be filed*. Good cause includes, but is not limited to, delay in the production of a transcript necessary to develop the Statement so long as the delay is not attributable to a lack of diligence in ordering or paying for such transcript by the party or counsel on appeal. In extraordinary circumstances, the judge may allow for the filing of a Statement or amended or supplemental Statement *nunc pro tunc*.

PA. R.A.P. 1925(b)(2) (emphasis added).

Purchaser explains that he filed the Rule 1925(b) statement untimely because he was waiting for the transcript of the December 20, 2016, hearing. The 21-day period may be enlarged to account for a delay in obtaining a transcript, but the appellant must request an enlargement of time from the trial court. Purchaser did not make this request, and he did not raise the issue of good cause until this appeal. It is too late.[4]

In sum, on January 23, 2017, the trial court directed Purchaser to file a Rule 1925(b) statement within 21 days, *i.e.*, on or before February 13, 2017. Purchaser filed it on February 17, 2017, which was four days late. We are constrained to hold that his statement was untimely filed and that Purchaser has waived all issues on appeal.

---

[4] In any event, Purchaser has not established good cause. Purchaser submitted the transcript request form but did not use the correct docket number. On February 23, 2017, after the deadline to submit the Rule 1925(b) statement had passed, Purchaser submitted the correct form with the correct docket number. Supplemental Reproduced Record at 1b (S.R.R. __). Additionally, the transcript was not necessary to the filing of the Rule 1925(b) statement. Purchaser had not received the transcript when he filed the Rule 1925(b) statement. S.R.R. 4b, ¶5.

7

However, even if Purchaser had filed a timely Rule 1925(b) statement, he would not have prevailed on the merits. The trial court credited Taxpayer's testimony that she attempted to pay the delinquent taxes three days before the sale and that her proffered payment was improperly refused.

The Tax Sale Law assists in the collection of taxes and is not intended to create investment opportunities for others. *Stanford–Gale v. Tax Claim Bureau of Susquehanna County*, 816 A.2d 1214, 1216 (Pa. Cmwlth. 2003); *see also Hess v. Westerwick*, 76 A.2d 745, 748 (Pa. 1950) ("The purpose of tax sales is not to strip the taxpayer of his property but to insure the collection of taxes."). Due process is implicated in any taking of property for the collection of taxes. As explained by the United States Supreme Court:

> People must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property. But before forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking.

*Jones v. Flowers*, 547 U.S. 220, 234 (2006). Because of these due process concerns, this Court has explained that

> the focus is not on the alleged neglect of the owner, which is often present in some degree, but on whether the activities of the Bureau comply with the requirements of the statute.

*Smith v. Tax Claim Bureau of Pike County*, 834 A.2d 1247, 1251 (Pa. Cmwlth. 2003). A failure by a tax claim bureau to comply with each and every statutory requirement will nullify a sale. *Id*. at 1252.

Purchaser contends that the Tax Claim Bureau complied with the notice requirements in Section 602 of the Tax Sale Law and, therefore, the sale cannot be

8

voided and his title to the property invalidated. In its Rule 1925(a) opinion, the trial court stated:

> [T]his Court found that [Taxpayer] had actual notice of the tax sale because she testified that she read the notice that was posted on her property by the Bureau on July 5, 2016…. Thus, the issue for this Court became whether [Taxpayer] attempted to make a payment on the past-due taxes prior to the tax sale, and if so, whether the [Tax Claim] Bureau erred in refusing said payment.

Trial Court 1925(a) op., 3/23/2017, at 4; R.R. 108a. Contrary to Purchaser's contention, the trial court did not void the sale of the Property because of Taxpayer's lack of notice.

Prior to sale of real property for unpaid taxes, a tax claim bureau must give a taxpayer notice and *opportunity to cure* the unpaid taxes. *See, e.g., Sanders v. Westmoreland County Tax Claim Bureau*, 92 A.3d 97 (Pa. Cmwlth. 2014). In *Sanders*, this Court explained:

> When the owner of a property fails to pay real estate taxes on that property, the amount of those taxes becomes a first lien against the property and is filed with the tax claim bureau of the county in which the property is located. If the lien is not satisfied, the tax claim bureau will, after notice and *opportunity to cure,* offer the property for sale at an upset tax sale. *A property owner may satisfy the lien(s) against his property by paying the amount of the lien(s) to the tax claim bureau prior to an upset sale….*

*Id.* at 98 (quoting *Commonwealth v. Sprock*, 795 A.2d 1100 (Pa. Cmwlth. 2002)) (emphasis added).

Moreover, Section 603 of the Tax Sale Law states, in pertinent part:

> Any owner or lien creditor of the owner may, at the option of the bureau, prior to the actual sale, (1) cause the property to be removed from the sale by payment in full of taxes which have

9

become absolute and of all charges and interest due on these taxes to the time of payment, or (2) enter into an agreement, in writing, with the bureau to stay the sale of the property upon the payment of twenty-five per centum (25%) of the amount due on all tax claims and tax judgments filed or entered against such property and the interest and costs on the taxes returned to date, as provided by this act, and agreeing therein to pay the balance of said claims and judgments and the interest and costs thereon in not more than three (3) instalments all within one (1) year of the date of said agreement.… *So long as said agreement is being fully complied with by the taxpayer, the sale of the property covered by the agreement shall be stayed.*

72 P.S. §5860.603 (emphasis added); *see also Moore v. Keller*, 98 A.3d 1, 5 (Pa. Cmwlth. 2014) (holding that "where an owner has paid at least 25% of the taxes due, the tax authority is required to inform the owner of the option to enter into an installment agreement and that a failure to do so is a violation of the owner's due process rights.").

Here, Taxpayer attempted to make payment *before* the upset sale took place, but the Tax Claim Bureau refused payment. The Tax Claim Bureau acted contrary to the Tax Sale Law because it was required to allow Taxpayer an "opportunity to cure" and make payment on the taxes prior to upset sale. *See Sanders*, 92 A.3d at 98.

In addition, the Tax Claim Bureau failed to determine whether the cash payment Taxpayer sought to make on the Property on September 16, 2016, was at least 25% of the amount of the delinquent taxes owed on the Property. As stated above, under the Tax Sale Law, if a taxpayer offers 25% of the outstanding delinquent taxes, a tax claim bureau is required to offer the taxpayer the option of entering into an installment agreement for the delinquent taxes on a property. *See* 72 P.S. §5860.603. Here, the Tax Claim Bureau turned Taxpayer away without first

10

determining whether Taxpayer's cash payment would cover 25% of the delinquent taxes owed on the Property, let alone offer Taxpayer an installment agreement. In this way, the Tax Claim Bureau acted contrary to the Tax Sale Law. On these facts, the trial court properly voided the sale.

For the above-stated reasons, we affirm the order of the trial court.

_____
MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nancy G. Jenkins           :
                         :
           v.                 :   No. 71 C.D. 2017
                         :
Fayette County Tax        :
Claim Bureau              :
                         :
          v.                 :
                         :
Scott D. Bush,            :
              Appellant      :

## **O R D E R**

AND NOW, this 3rd day of January, 2018, the order of Fayette County Court of Common Pleas dated December 21, 2016, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge