IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jose Rodriguez Rodriguez,     :
    :
    Appellant    :
    :
    v.    : No. 302 C.D. 2024
    : Submitted: May 6, 2025
Schuylkill County Tax Claim Bureau  :

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
    HONORABLE STACY WALLACE, Judge
    HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK    FILED: March 23, 2026

Jose Rodriguez Rodriguez (Owner) appeals from the February 27, 2024 order of the Schuylkill County Court of Common Pleas (trial court). The trial court denied Owner's objections to the sale of his property located at 221 Cherry Street, Shenandoah, Pennsylvania (Property), at the Schuylkill County Tax Claim Bureau's (Bureau) September 18, 2023 upset tax sale held pursuant to the Real Estate Tax Sale Law (RETSL).[1] Upon careful review, we affirm.

By way of background, Owner's Property was sold to Suffolk County Properties at the Bureau's September 18, 2023 tax sale due to Owner's delinquent taxes for the 2021 tax year. Owner filed timely objections thereto on October 6, 2023, arguing that the Bureau failed to comply with RETSL's notice requirements and that it did not provide Owner with a sufficient opportunity to cure prior to sale.

The trial court held a hearing on Owner's objections on December 20, 2023. Therein, the Bureau offered the testimony of Russell Motsko, Clerk Typist II

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§5860.101-5860.803.

for the Bureau, and a tax claim file for the Property. Regarding the Bureau's Section 602 notice requirements, Motsko testified that the Bureau sent a Notice of Upset Tax Sale via certified mail, return receipt requested, restricted delivery, to Owner at 227 North West Cherry Street, Shenandoah, Pennsylvania, as the listed mailing address for Owner. Trial Court's Hearing, 12/20/23, Notes of Testimony (N.T.), at 8-9, 11; *see also* Original Record (O.R.) at Item No. 7, pages 68-70. This Notice was returned as unclaimed, however. Motsko subsequently testified that the Bureau sent Owner another Notice of Upset Tax Sale by first-class mail on August 10, 2023 (more than 10 days prior to the sale as required by Section 602 of RETSL). Trial Court's Hearing, N.T., at 13-14; *see* O.R. at Item No. 7, pages 63-65.

Further, Motsko testified that the tax claim file included timely proof of publication in the Republican-Herald, the Schuylkill County Legal Record, and the South Schuylkill News. Trial Court's Hearing, N.T., at 14; *see* O.R. at Item No. 7, pages 39-61. Concerning posting, Motsko testified that a Notice of Sale was posted at the Property on August 26, 2023, by a duly authorized poster, Ryan Briggs, who both posted Notice on the front door of the Property and also affected personal service on Owner. Trial Court's Hearing, N.T., at 16-17; *see* O.R. at Item No. 7; pages 68-71. Finally, on cross-examination, Motsko agreed that the posted Notice contained the following language: "**No payments will be accepted on Upset Sale properties after 4:30 p.m. on last business day before Upset Sale date**." Trial Court's Hearing, N.T., at 21-20; *see* O.R. at Item No. 7, page 70.

Next, the Bureau introduced the testimony of Ryan Briggs. As indicated, Briggs was a duly authorized poster for the Bureau who posted Notice at the Property on August 26, 2023. Briggs recalled that when he posted the Notice and knocked on the door of the Property, Owner – whom Briggs identified at the

2

hearing – answered. Trial Court's Hearing, N.T., at 30. After explaining the purpose of the posting, Briggs ascertained that Owner did not speak English. *Id*., N.T., at 31. A friend of Owner's, also present at the Property, offered to interpret for Briggs and Owner. *Id*. Ultimately, Owner refused to sign the Notice but related through the interpreter that he would pay his delinquent taxes through the Bureau's website the next day. *Id*., N.T., at 33. Briggs recorded as much, but noted that the Property was owner-occupied, in a USPS Proof of Service/Posting. O.R. at Item No. 7, page 68. Because Briggs had affected personal service on Owner, he testified that he did not complete a posting at Owner's listed mailing address. Trial Court's Hearing, N.T., at 37.

In an opinion and order dated February 27, 2024, the trial court dismissed Owner's objections to the Sale. Regarding notice, the trial court concluded that Owner received actual notice of the sale, as indicated by Briggs' testimony, thereby tempering the Bureau's duty to prove strict compliance with the requirements of RETSL. Trial Court's Op. at 5 (citing *Matter of Tax Sales by Tax Claim Bureau of Dauphin County*, 651 A.2d 1157, 1160 (Pa. Cmwlth. 1994) (*Matter of Tax Sales*)). Similarly, the trial court was not persuaded by Owner's argument that the Bureau had unlawfully minimized its opportunity to cure because the record failed to disclose any attempt by Owner to tender payment of his delinquent taxes. The trial court therefore found Owner's reliance on *Jenkins v. Fayette County Tax Claim Bureau*, 176 A.3d 1038 (Pa. Cmwlth. 2018), to be misplaced. Trial Court's Op. at 5-6. This timely appeal followed, in which Owner once again asserts that the Bureau failed to strictly comply with RETSL's notice requirements and that the

3

Bureau unlawfully minimized Owner's opportunity to cure under Section 603 of RETSL, 72 P.S. §5860.603.[2]

Preliminarily, it is well settled that each of the statutory notice provisions in RETSL "must be strictly construed lest a person be deprived of property without due process." *Maya v. County of Erie Tax Claim Bureau*, 59 A.3d 50, 55 (Pa. Cmwlth. 2013). Regarding the notice provisions of RETSL, "the tax claim bureau bears the burden of proving strict compliance . . . ." *In re Upset Tax Sale of September 29, 2014*, 163 A.3d 1072, 1074 (Pa. Cmwlth. 2017).

Owner's arguments ignore the trial court's conclusion that he possessed actual notice of the sale. Instead, Owner principally argues that the Bureau failed to demonstrate its strict compliance with RETSL's notice requirements because the Bureau's exhibit on page 70 of the Original Record (the 2023 Notice of Upset Tax Sale) was returned unclaimed, thereby failing to conform with Section 602(e) of RETSL. Owner's Brief at 7.

However, the Bureau need not demonstrate strict compliance with Section 602's notice requirements when the Bureau "positively" proves that an owner of real property received either express or implied actual notice of the sale. *Sabbeth v. Tax Claim Bureau of Fulton County*, 714 A.2d 514, 517 (Pa. Cmwlth. 1998). Whether a property owner received actual notice of the sale is a question of fact. As such, we may not disturb the trial court's finding on that question or disturb that finding on appeal so long as this finding is supported by substantial evidence.

---

[2] "Our review in tax sale cases is 'limited to determining whether the trial court abused its discretion, clearly erred as a matter of law[,] or rendered a decision with a lack of supporting evidence.'" *In re Consolidated Reports and Return by the Tax Claims Bureau of Northumberland County of Properties*, 132 A.3d 637, 643 n.12 (Pa. Cmwlth. 2016) (*Appeal of Neff*).

4

*Aldhelm, Inc. v. Schuylkill County Tax Claim Bureau*, 879 A.2d 400, 407 (Pa. Cmwlth. 2005).

Here, however, Owner makes no argument denying that he possessed actual notice of the Sale. Indeed, the circumstances of this case suggest that he did. The trial court found that Briggs' testimony was credible and that Briggs' posting of the Notice and his conversation with Owner (via an interpreter) was sufficient to apprise Owner of the Upset Sale. Trial Court's Hearing, N.T., at 31-33. Thus, under *Matter of Tax Sales*, *Sabbeth*, and related precedent, *see, e.g.*, *Appeal of Neff*, 132 A.3d at 647-48, the trial court correctly disposed of Owner's argument regarding the Bureau's strict compliance with the provisions of Section 602 of RETSL.[3]

Finally, Owner argues that the Bureau unlawfully minimized his opportunity to cure, *i.e.*, pay his delinquent taxes, by requiring payment at the close of the business day on September 15, 2023 (the Friday before the Bureau's Monday morning sale). Owner's Brief at 8-9. Owner directs our attention to *Jenkins*, which

---

[3] This Court has recently expressed some hesitation concerning our "actual notice" precedent. *See, e.g.*, *In re Sale of Tax Delinquent Property on October 19, 2020*, 308 A.3d 890, 899 n.14 (Pa. Cmwlth. 2024); *AES Drilling Fluids, LLC v. Clearfield County Tax Claim Bureau* (Pa. Cmwlth., No. 583 C.D. 2023, filed June 9, 2025), slip op. at 14-15; *Hempfield 115 Trust v. Westmoreland County Tax Claim Bureau* (Pa. Cmwlth., No. 989 C.D. 2022, filed June 20, 2025) (Covey, J., dissenting), *appeal denied*, __ A.3d __ (Pa. 2026), (Pa., No. 226 W.A.L. 2025, filed February 18, 2026). To that end, we observe that, in this case, the Bureau strictly complied with the notice requirements set forth in Section 602(e) of RETSL, 72 P.S. §5860.602(e).

Concerning Owner's principal argument, we have previously held that the "[B]ureau's burden to prove compliance with notice requirements for a tax sale does not require proof that the property owner actually signed the certified mail receipt or actually received the notice; rather, the tax claim bureau must only show that it sent all required notices to the property owner or owners, *not that the owner or owners actually received notice of tax sale*." *FS Partners v. York County Tax Claim Bureau*, 132 A.3d 557, 581 (Pa. 2016) (emphasis in original). Thus, here, it is immaterial that the 2023 Notice of Upset Tax Sale was returned unclaimed because the Bureau *sent* the notice to Owner. As such, this case does not present the proper opportunity for resolving any inconsistencies in our "actual notice" precedent.

he believes requires an owner's opportunity to cure to run up to the moment of the tax sale itself. *Id*. Because a Bureau representative testified that the Bureau would not have accepted Owner's payment had he attempted to pay after the Friday deadline, Owner believes that the Bureau acted contrary to RETSL. *Id*. at 8-9.

A delinquent taxpayer's opportunity to cure arises from Section 603 of RETSL, which provides in pertinent part:

> Any owner or lien creditor of the owner may, at the option of the bureau, prior to the actual sale, (1) cause the property to be removed from the sale by payment in full of taxes which have become absolute and of all charges and interest due on these taxes to the time of payment, or (2) enter into an agreement, in writing, with the bureau to stay the sale of the property upon the payment of twenty-five per centum (25%) of the amount due on all tax claims and tax judgments . . . So long as said agreement is being fully complied with by the taxpayer, the sale of the property covered by the agreement shall be stayed.

72 P.S. §5860.603. In practice, we have explained that a "property owner may satisfy the lien(s) against his property by paying the amount of the lien(s) to the tax claim bureau prior to an upset sale or he may bid on the property at the upset sale." *Commonwealth v. Sprock*, 795 A.2d 1100, 1102 (Pa. Cmwlth. 2002). *See also Sanders v. Westmoreland County Tax Claim Bureau*, 92 A.3d 97, 98 (Pa. Cmwlth. 2014).

Presently, Owner's focus on how long the opportunity to cure must run for ignores the more immediate issue: that Section 603 of RETSL conditions the opportunity to cure on the property owner's action. *See* 72 P.S. §5860.603 ("Any owner . . . **may cause** the property to be removed from the sale upon payment in full . . . .") (emphasis added). Stated differently, Section 603 of RETSL does not passively operate to set aside a tax sale; rather, the issue of a delinquent taxpayer's

6

opportunity to cure only materializes when the owner actually attempts to tender payment, but is refused. For example, in *Jenkins*, 176 A.3d at 1044, we observed, by way of *dicta*, that the trial court properly set aside the tax sale in question because therein the property owner actually attempted to tender a portion of her payment before the tax sale took place, which may have been sufficient to cause the Bureau to offer the property owner an installment plan and to remove the property from sale under Section 603 of RETSL.

Similarly, in *Matter of Tax Sale 2018-Upset*, 227 A.3d 957, 961-62 (Pa. Cmwlth. 2018), we held that a tax sale bureau's duty to inform a property owner of the option to enter into an installment agreement only manifests when the property owner has actually tendered payment of at least 25% of the delinquent taxes. *See also Moyer v. Schuylkill County Tax Claim Bureau* (Pa. Cmwlth., No. 241 C.D. 2023, filed January 19, 2024), slip op. at 9-10 (Bureau violated property owner's opportunity to cure by ignoring its own policy of pausing an upset tax sale upon receiving proof of funding from Pennsylvania Homeowner Assistance Fund to cover delinquent taxes).

Here, Owner made no such attempt to tender payment of his delinquent taxes, such that Section 603 of RETSL is irrelevant to the instant proceeding. In other words, even if Owner has advanced meritorious arguments regarding the Bureau's policy, these arguments do nothing to help his case given his failure to tender any payment whatsoever.

Accordingly, the trial court's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

Judge Wallace concurs in result only.

7

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jose Rodriguez Rodriguez,      :
                               :
                  Appellant   :
                               :
         v.               : No. 302 C.D. 2024
                               :
Schuylkill County Tax Claim Bureau  :

**O R D E R**

AND NOW, this 23rd day of March, 2026, the February 27, 2024 Order of the Court of Common Pleas of Schuylkill County is **AFFIRMED**.

_____
MICHAEL H. WOJCIK, Judge